IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY EDELSTEIN, Individually and as parent of S.E., a minor, 1751 W. 72nd Pl. Indianapolis, IN 46260 | ) ) ) ) | Case No.  **1:23-CV-754** |
| | ) | |
| and | ) ) | Judge |
| | ) | |
| S.E., a minor, 1751 W. 72nd Pl. Indianapolis, IN 46260 | ) ) ) ) | |
| | ) | |
| Plaintiffs | ) ) | |
| | ) | |
| v. | ) ) | **COMPLAINT FOR DECLARATORY ACTION AND INJUNCTIVE RELIEF WITH JURY DEMAND** |
| JUDGE ANNE FLOTTMAN, Individually and in her Official Capacity, 800 Broadway Avenue Cincinnati, OH 45202 | ) ) ) ) ) | Kimberly Edelstein (0074922) 1751 W. 72nd Pl. Indianapolis, IN 46260 |
| | ) | Tel: (614) 975-2400 |
| HAMILTON COUNTY, OHIO c/o County Commissioner's Office 134 E. Court St., Rm. 603 Cincinnati, OH 45202 | ) ) ) ) ) | Email: kedelsteinesq@outlook.com |
| | ) | |
| MAGISTRATE CRAIG WEBB, Individually and in his Official Capacity, 800 Broadway Avenue Cincinnati, OH 45202 | ) ) ) ) ) | |
| | ) | |
| KIMBERLY KENT Individually and in her Official Capacity, 800 Broadway Avenue Cincinnati, OH 45202 | ) ) ) ) | |
| | ) | |
| COUNTY RISK SHARING AUTHORITY, c/o Brian A. Basil, Statutory Agent 1114 Dublin Road Columbus, OH 43215 | ) ) ) ) | |
| | ) | |
| UNKNOWN INSURANCE CARRIER #1 providing liability and/or malpractice | ) ) | |

1

coverage to the Magistrates and/or Judges )
  of The Hamilton County Domestic )
  Relations Court )
c/o Hamilton County Commissioners )
134 E. Court St., Rm. 603 )
Cincinnati, OH 45202 )
                                   )
      Defendants )

Plaintiff, Kimberly Edelstein, Individually and as parent for S.E., a Minor, and Plaintiff S.E., a Minor (collectively herein as "Plaintiffs") for their Complaint against Defendants, Judge Anne Flottman, Individually and in her Official Capacity, Magistrate Craig Webb, Individually and in his Official Capacity, Kimberly Kent, Individually and in her Official Capacity, County Risk Sharing Authority, and Unknown Insurance Carrier #1 who provides liability and/or malpractice coverage to the Magistrates and/or Judges of Hamilton County Domestic Relations Court, state as follows:

## **PARTIES**

1. Plaintiff, Kimberly Edelstein ("Plaintiff Edelstein"), is an observant Jew, parent of S.E., a minor, and a resident of Marion County, Indiana.

2. Plaintiff, S.E., a minor ("Plaintiff S.E."), is an observant Jew, the child of Plaintiff Edelstein, in Plaintiff Edelstein's custody and care, and a resident of Marion County, Indiana.

3. Defendant, Judge Ann Flottman ("Defendant Flottman"), is a resident of Hamilton County, Ohio and an elected official who serves the citizens of Hamilton County, Ohio in the Domestic Relations Division of the Hamilton County Court of Common Pleas pursuant to the laws of the State of Ohio.

4.    Defendant, Hamilton County, Ohio ("Defendant Hamilton County"), is a county government organized under the laws of the State of Ohio and the employer of the Magistrates and Judges of the Hamilton County Domestic Relations Court.

5.    Defendant, Magistrate Craig Webb ("Defendant Webb"), is an appointed official who serves the citizens of Hamilton County as a Magistrate in the Domestic Relations Division of the Hamilton County Court of Common Pleas pursuant to the laws of the State of Ohio.

6.    Defendant, Kimberly Kent ("Defendant Kent"), is an appointed official who serves the citizens of Hamilton County as a Licensed Social Worker in the Dispute Resolution Department of the Domestic Relations Division of the Hamilton County Court of Common Pleas pursuant to the laws of the State of Ohio.

7.    Defendant Country Risk Sharing Authority ("CORSA") is a non-for profit corporation formed in the State of Ohio and under the laws of the State of Ohio that provides insurance coverage for Hamilton County, Ohio and its officials.

8.    Defendant Unknown Insurance Carrier #1 ("Defendant UIC #1") is a carrier of liability and/or malpractice insurance for the Magistrates and/or Judges at the Domestic Relations Division of the Hamilton County Court of Common Pleas.

## JURISDICTION

9.    This is a suit authorized and instituted pursuant to 42 U.S.C.§1983, which protects individuals from deprivation of civil rights by government entities and persons acting under color of state law; pursuant to 42 U.S.C. §2000bb et seq., prohibiting religious exercise from being substantially burdened by a government official; pursuant to Ohio Rev. Code §2921.45, prohibiting the deprivation of a constitutional or statutory right by a

public servant; Art. I, Sect. 1 of The Ohio Constitution, protecting inalienable rights; Art. I, Sect. 7 of The Ohio Constitution prohibiting the interference with the rights of conscience; Art. I, Sect. 16 of The Ohio Constitution protecting Due Process; the First and Fourteenth Amendments to the U.S. Constitution, Oh. Revised Code §2921.45 which makes it a criminal misdemeanor for a public official to interfere with the civil rights of a person, and the common law of Ohio.

10. Jurisdiction is with this Court pursuant to 28 U.S.C.§§1331, 1343(a)(3), 1343(a)(4), and 1367(a), as Plaintiff alleges deprivation of rights and liberty under the U.S. Constitution, the Ohio Constitution, and federal statutes.

11. Venue is proper in the Southern District of Ohio, Western Division under 28 U.S.C.§1391(b) as all claims arose within Hamilton County, Ohio, all but one Defendant are located in Hamilton County, Ohio and that one Defendant does business in the Southern District of Ohio.

## FACTUAL ALLEGATIONS

12. Plaintiff Edelstein is/was a litigant in three Domestic Relations cases in Hamilton County Court of Common Pleas, Domestic Relations Division.

13. Plaintiff S.E. was issue of Plaintiff Edelstein's marriage and the subject of custody and support matters before the Hamilton County Court of Common Pleas, Domestic Relations Division.

14. At all relevant times, Defendant Hamilton County was the political subdivision vicariously liable for the wrongful acts committed by its officials under Ohio law, including Oh. Rev. Code §2744 et seq.

4

15. At all relevant times, Defendant Flottman was acting under color of law in her official capacity as Judge of Hamilton County Court of Common Pleas, Domestic Relations Division.

16. At all relevant times, Defendant Webb was acting under color of law in his official capacity as Magistrate of Hamilton County Court of Common Pleas, Domestic Relations Division.

17. At all relevant times, Defendant Kent was acting under color of law in her official capacity as Court Social Worker of the Dispute Resolution Division of Hamilton County Court of Common Pleas, Domestic Relations Division.

18. Defendant County Risk Sharing Authority ("CORSA") provides insurance coverage for liability by public officials of Defendant Hamilton County.

19. Upon information and belief, Defendant UIC #1 provides insurance coverage for liability and/or malpractice by public officials of Defendant Hamilton County and/or the Magistrates and/or Judges at the Hamilton County Court of Common Pleas, Domestic Relations Division.

20. On April 21 2022, Plaintiff Edelstein's husband abandoned his family and relocated to Montgomery County, Ohio. Plaintiff Edelstein relocated out of Hamilton County to seek employment to support herself and Plaintiff S.E. and to seek a Jewish Community so they could increase their level of observance of their religion. Plaintiff Edelstein left Ohio for her job search and, after about one month, gained employment and relocated to Indiana.

21. Upon information and belief, Plaintiff Edelstein's husband abandoned the family, including his son, Plaintiff S.E., because he ceased observing his religious practices, was

5

purchasing illegal drugs in the parking lot of his employer, Walmart, located at 5303 Bowen Dr., Mason, OH 45040, and had relapsed into a drug addiction.

22. On August 2, 2022, Plaintiff Edelstein's husband filed a divorce action in the Hamilton County Court of Common Pleas, Domestic Relations Division ("the DR Court"). Neither Plaintiff Edelstein nor her husband were residents of Hamilton County at least 90 days prior to the filing of divorce by Plaintiff Edelstein's husband as required under Ohio law, Ohio Rules of Civil Procedure 3(C)(9).

23. Plaintiff Edelstein was not served with a copy of the divorce filing until about one month after it was filed.

24. When Plaintiff Edelstein notified Judge Sieve, the original judge presiding over her case, that the DR Court lacked venue, the DR Court refused to dismiss the case for lack of Venue. Plaintiff Edelstein renewed this Motion when Judge Flottman replaced Judge Sieve and the motion was denied again.

25. Upon information and belief, Magistrate Longano, who presided over the early parts of the divorce matter and who reports to Defendant Flottman made comments to Plaintiff Edelstein's attorney that the court officials disliked Plaintiff Edelstein.

26. Upon information and belief, Defendants Flottman and Webb took oaths in conjunction with their official position to uphold the Constitution of Ohio and The United States.

27. Upon information and belief, Defendants Flottman and Webb disregarded those oaths in dereliction of their duties.

28. Upon information and belief, the DR Court kept jurisdiction to maintain control over Plaintiff Edelstein's divorce case so they could act punitively towards her.

## COUNT I
## INJUNCTIVE RELIEF

29. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

30. Upon information and belief, Defendant Flottman intends to continue to violate Plaintiffs' First Amendment and Fourteenth Amendment rights by issuing orders contrary to the Ohio and U.S. Constitutions.

31. Upon information and belief, Defendant Flottman places herself in legal jeopardy pursuant to Oh. Rev. Code §2921.45 and federal law by the continued violation of Plaintiffs' civil rights.

32. Plaintiffs have reasonable grounds to believe that unlawful orders will continue to be issued, including an order close in time to November 17, 2023 removing Plaintiff S.E. from Plaintiff Edelstein's care and this jeopardizes Plaintiffs' physical freedom, religious observances, and professional license as Plaintiff Edelstein is placed in a position where her religious observance and pursuit of protection under the U.S. Constitution causes Plaintiff Edelstein to violate these court orders.

33. Upon information and belief, Plaintiff Edelstein has reasonable grounds to believe that the Defendant Flottman's intended removal of Plaintiff S.E. from her care would significantly harm Plaintiff S.E. by destroying his sense of stability, his educational progress, and create severe    psychological damage by placing Plaintiff S.E. in the care of his father who is a drug addict.

34. Plaintiff Edelstein has reasonable grounds to believe that an injunction would not unduly harm Defendant Flottman, yet would serve a public interest by preventing further

7

violation of Plaintiffs' Constitutional rights and preventing further abuse of power by public officials.

35. Plaintiff Edelstein has reasonable grounds to believe that an injunction is necessary to prevent Defendant Flottman from violating O.R.C. §2921.45, a criminal statute that carries a misdemeanor penalty.

36. Upon information and belief, Plaintiff Edelstein has reasonable grounds to believe that Defendant Flottman refuses to act in a reasonable and judicious manner regarding Plaintiffs' civil rights. Plaintiff Edelstein believes that Defendant Flottman is acting vindictively, abusing her authority, and is insistent on acting contrary to her official duties. It is therefore necessary for injunctive relief to prevent Defendant Flottman from continuing to act in a manner that threatens her position, reputation, and confidence in the judicial system.

37. Injunctive relief is appropriate under 42 U.S.C. §1983.

## COUNT II
## VIOLATION OF 42 U.S.C. §1983
## FIRST AMENDMENT - FREE EXERCISE OF RELIGION
### (as to Plaintiff Edelstein by Defendant Flottman)

38. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

39. Plaintiff Edelstein's observance of the tenets of Judaism is an activity protected under the free exercise clause of The First Amendment of the U.S. Constitution.

40. The exercise of Plaintiff Edelstein's Judaism involves observing the Sabbath, which runs from 18 minutes before sundown on Friday to one hour after sundown on Saturday. Sabbath observance involves 39 categories of prohibited activities including driving. The

Sabbath observance also involves engaging in customs surrounding the Sabbath, such as preparing a meal, lighting candles, and saying certain blessings over wine and bread.

41. Plaintiff Edelstein is required by several court orders issued by judges and magistrates at the DR Court, including a 75N Order issued by Defendant Flottman ("75N Order"), to violate her Sabbath observance in order to handle all of transportation of her minor child to and from out of state for visitation with her husband.

42. The order was an exercise of Defendant Flottman's administrative duties.

43. Upon information and belief, Defendant Flottman included language in the 75N Order to diminish the appearance of anti-Semitism, yet the 75N Order still had the intended effect of punishing Plaintiff Edelstein by negatively impacting her Sabbath observance and jeopardizing her employment and health.

44. There were alternate methods to accomplish the visitation, but Defendant Flottman ignored the other methods and refused to alter the 75N Order.

45. Although Plaintiff Edelstein notified Defendant Flottman of this deeply held religious belief, Defendant Flottman acted in an anti-Semitic manner and blatantly disregarded Plaintiff Edelstein's First Amendment Right.

46. Upon information and belief, Defendant Flottman acted in a hostile manner towards the Plaintiffs' Jewish observance, with a stubborn refusal to understanding and regard the requirements of Plaintiff Edelstein's deeply held religious beliefs.

47. Plaintiff Edelstein filed several motions to alert Defendant Flottman of the illegality of her position, but Defendant Flottman continued to act in an increasingly punitive manner towards Plaintiff Edelstein.

48.  Defendant Flottman was acting under color of law in her official capacity when she deprived Plaintiff Edelstein of her constitutional right to the free exercise and practice of her Jewish religion.

49.  Upon information and belief, Defendant Flottman acted with malice, hatred, a spirit of ill will, and/or with reckless or callous indifference to the federally protected right of Plaintiff Edelstein.

50.  Upon information and belief, Defendant Flottman's actions deprived Plaintiff Edelstein of her rights, privileges, and immunities provided by the Ohio Constitution and the U.S. Constitution, more specifically the right to the free exercise of religion as secured to her by the First Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

51.  Upon information and belief, by forcing Plaintiff Edelstein to violate a court order, Plaintiff Edelstein will suffer damages including loss of parenting rights, loss of physical freedom, loss of and/or damage to her professional license, loss of reputation, and her case will be negatively impacted.

52.  As a direct and proximate cause of Defendant Flottman's deprivation of Plaintiff Edelstein's constitutionally protected right, Plaintiff Edelstein has been damaged.

53.  As a direct and proximate cause of the conduct of Defendant Flottman, Plaintiff Edelstein has been damaged and seeks compensatory, punitive, and liquidated damages in the amount of One Million Dollars ($1,000,000.00).

**COUNT III**
**VIOLATION OF 42 U.S.C. §1983**
**FIRST AMENDMENT - FREE EXERCISE OF RELIGION**
**(as to Plaintiff S.E. by Defendant Flottman)**

54.  Plaintiffs reallege the prior paragraphs, as if fully set forth below.

55. Plaintiff S.E.'s observance of the tenets of Judaism is an activity protected under the free exercise clause of The First Amendment of the U.S. Constitution.

56. The exercise of Plaintiff S.E.'s Judaism involves observing the Sabbath, which runs from 18 minutes before sundown on Friday to one hour after sundown on Saturday.  Sabbath observance involves 39 categories of prohibited activities including driving.  The Sabbath observance also involves engaging in customs surrounding the Sabbath, such as helping to prepare a meal, lighting candles, and saying certain blessings over wine and bread.

57. Plaintiff S.E. is required by several court orders issued by judges and magistrates at the DR Court, including a 75N Order issued by Defendant Flottman, to violate his Sabbath observance by staying with his father in Cincinnati, where he would have to be transported by vehicle to synagogue and where his father does not keep kosher.

58. Plaintiff S.E. has a religious Jewish Community in Indiana where he can walk to synagogue, observe the Sabbath in accordance with Judaism and keep kosher

59. The issuance of a 75N Order was an exercise of Defendant Flottman's administrative duties.

60. There were alternate methods to accomplish visitation, but Defendant Flottman ignored the other methods and refused to alter the 75N Order.

61. Although Plaintiff Edelstein notified Defendant Flottman of this deeply held religious belief, Defendant Flottman acted in an anti-Semitic manner, blatantly disregarded Plaintiff S.E.'s First Amendment Right.

62. Upon information and belief, Defendant Flottman acted in a hostile manner towards the Plaintiffs' Jewish observance, with a stubborn refusal to understanding and regard the requirements of Plaintiff S.E.'s deeply held religious beliefs.

11

63. Defendant Flottman was acting under color of law in her official capacity when she deprived Plaintiff S.E. of his constitutional right to the free exercise and practice of his Jewish religion.

64. Upon information and belief, Defendant Flottman acted with malice, hatred, a spirit of ill will, and/or with reckless or callous indifference to the federally protected right of Plaintiff S.E..

65. Upon information and belief, Defendant Flottman's actions deprived Plaintiff S.E. of his rights, privileges, and immunities provided by the Ohio Constitution and the U.S. Constitution, more specifically the right to the free exercise of religion as secured to him by the First Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

66. Plaintiff S.E. is at a tender and impressionable age, two years from his Bar Mitzvah, and will suffer damages including loss of religious belief, loss of religious education, and loss of a connection to God. Defendant Flottman's actions destroy the very essence of who Defendant S.E. is and significantly impacts how he grows and develops into a Jewish man.

67. As a direct and proximate cause of Defendant Flottman's deprivation of Plaintiff S.E. constitutionally protected right, Plaintiff S.E. has been damaged.

68. As a direct and proximate cause of the conduct of Defendant Flottman, Plaintiff S.E. has been damaged and seeks compensatory, punitive, and liquidated damages in the amount of One Million Dollars ($1,000,000.00).

**COUNT IV**
**VIOLATION OF 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - PROCEDURAL DUE PROCESS**
**(as to Plaintiff Edelstein by Defendant Flottman)**

69. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

12

70.     During the process of managing Plaintiff Edelstein's divorce case, Defendant Flottman set a two-hour hearing on the court calendar to address the pending motions for May 19, 2023.

71.     As there were approximately fifteen pending motions, Plaintiff contacted Defendant Flottman's Law Clerk to determined whether testimony and evidence would be taken or if the matter was set for a status report.  Plaintiff was told it was a status report and no evidence or testimony would be taken.

72.     Based on this information, Plaintiff appeared without witnesses and evidence.

73.     Defendant Flottman proceeded to take evidence and testimony and attempted to address all 15 pending motions, rushing through evidence and making evidentiary rulings that did not comport with the Rules of Evidence.  As the majority of motions could not be heard in the limited time, Defendant Flottman held a few motions in abeyance.

74.     Among motions held in abeyance were several of Plaintiff Edelstein's Motions for Contempt for her husband liquidating an asset, harassing Plaintiff Edelstein, and interfering with her credit card by attempting to steal her reward points.  These motions have never been ruled upon and are over approximately eleven months old.

75.     Defendant Flottman then, acting under color of law, exercised her administrative powers and issued an Order that decided motions that were not addressed at the Hearing and were punitive towards Plaintiff.

76.     Plaintiff Edelstein, a former Magistrate, knew the normal course of a case and understood the proper administrative duties of a trier of fact in managing a case.

77.    Plaintiff Edelstein had a Fourteenth Amendment Procedural Due Process right to have her case managed efficiently, her motions heard and ruled upon in a timely manner, and to be treated fairly and in a neutral manner by Defendant Flottman.

78.    Upon information and belief, Defendant Flottman failed to manage the case in accordance with her judicial responsibilities and, instead, focused on punitively working towards taking custody of Plaintiff S.E. away from Plaintiff Edelstein.

79.    Despite the fact that Plaintiff Edelstein, Plaintiff S.E., and Plaintiff Edelstein's husband were not residents at least 90 days prior to the filing of the Complaint, Defendant Flottman issued a Decision to keep the case in Hamilton County.

80.    Upon information and belief, keeping the case in Hamilton County was a deliberate act to violate Plaintiff Edelstein's Procedural Due Process right to have the matter heard in the proper venue.

81.    Upon information and belief, the Guardian ad Litem assigned to the case ("GAL") failed to perform her duties under the law and Plaintiff Edelstein moved to have the GAL removed.  Immediately, thereafter, the GAL filed a Motion to Withdraw.

82.    Upon information and belief, Defendant Flottman permitted the withdrawal rather than the removal to protect the GAL and prevent a return of the fees paid to the GAL.  No GAL Report was issued and another GAL was not assigned by Defendant Flottman.

83.    The failure of Defendant Flottman to act in the best interest of the child under Ohio law significantly affected Plaintiff Edelstein's right to be evaluated properly prior to deciding to remove her parenting rights.

84.    Upon information and belief, Defendant Flottman's actions deprived Plaintiff of her right to procedural due process as secured to her by the Ohio Constitution and the Fourteenth Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

85.    As a direct and proximate cause of the conduct of Defendant Flottman, Plaintiff suffered damages including expenses related to this Complaint, Guardian ad Litem fees, and other court costs, pain and suffering, mental and emotional distress, and loss of health.

86.    As a direct and proximate cause of the conduct of Defendant Flottman, Plaintiff Edelstein has been damaged and seeks compensatory, punitive, and liquidated damages in the amount of One Million Dollars ($1,000,000.00).

### COUNT V
### VIOLATION OF 42 U.S.C. §1983
### FOURTEENTH AMENDMENT - SUBSTANTIVE DUE PROCESS
**(as to Plaintiff Edelstein by Defendant Flottman)**

87.    Plaintiffs reallege the prior paragraphs, as if fully set forth below.

88.    Upon information and belief, due to a drug addiction issue, Plaintiff Edelstein's husband was erratic in his demands related to Plaintiff S.E.

89.    Upon information and belief, physical custody of Plaintiff S.E. was not at issue between Plaintiff and her husband in the divorce case, with Plaintiff Edelstein's husband stating numerous times that he just wanted visitation with Plaintiff S.E. and for Plaintiff S.E. to remain with Plaintiff Edelstein in Indiana.

90.    Upon information and belief, multiple court officials, including the GAL, the Mediator, Defendant Flottman, and Defendant Kent, attempted to persuade Plaintiff Edelstein's husband to challenge physical custody to have a legitimate excuse to remove custody from Plaintiff Edelstein.

91.     Despite repeated indications that the father did not want physical custody and because there was no interest in his disturbing physical custody of Plaintiff S.E., Defendant Flottman took it upon herself (sua sponte) to challenge custody and ordered a full custody evaluation.

92.     Plaintiff Edelstein pointed out, on the record, that her husband didn't want physical custody of Plaintiff S.E. and that a determination giving physical custody to the father would be pointless as the father would not assume that responsibility. Furthermore, it was an abuse of discretion and a waste of judicial economy.

93.     Upon information and belief, Defendant Flottman stated on the record to Plaintiff Edelstein and her husband that unless (Mr. Edelstein) gives (Mrs. Edelstein) sole custody and "never wants to see his son again," Defendant Flottman was going to go forward with a custody evaluation. Defendant Flottman then proceeded to coax Plaintiff Edelstein's husband to indicate he wanted shared parenting. Plaintiff Edelstein objected to these comments.

94.     Upon information and belief, these comments from the bench were administrative in nature, a gross violation of the Judicial Code of Conduct, and designed to manipulate the course of the case to be punitive towards Plaintiff Edelstein.

95.     Defendant Flottman, acting under color of law, exercised her administrative powers and issued an Order for a Full Custody Evaluation ("Custody Evaluation Order").

96.     Upon information and belief, pursuant to the law in Ohio, Defendant Flottman was not allowed to order a custody evaluation unless custody was at issue in a divorce matter.

97.     Plaintiff Edelstein was entitled to her parental rights and to have the law applied as it was written.

98. A full custody evaluation would entail interviews of witnesses favorable to Plaintiff Edelstein and witnesses favorable to Plaintiff Edelstein's husband.

99. Upon information and belief, Defendant Flottman reversed her decision to have a full custody evaluation and ordered, instead a partial custody evaluation.

100. Upon information and belief, custody evaluations are required by law and policy to be neutral.

101. Upon information and belief, a partial custody evaluation would only require interviews of the two parents and the minor child. This eliminated the possibility for additional interviews to determine the truth of Plaintiff Edelstein's assertions and reduced the evaluation to a "he said/she said" situation, thus allowing for instances of prejudice to determine custody and eliminating neutrality.

102. Upon information and belief, this was done by Defendant Flottman to have control of the outcome of the custody evaluation to effectuate her preference of removing custody from Plaintiff Edelstein.

103. Plaintiff Edelstein has parental rights under the Fourteenth Amendment and the punitive removal of custody from Plaintiff Edelstein is a violation of this right and her substantive due process rights under the Fourteenth Amendment.

104. Upon information and belief, requiring Plaintiff Edelstein to handle all of transportation of her minor child to and from out of state for visitation with her husband was a punitive act designed to burden Plaintiff Edelstein with excess expense and occupy her time to prevent Plaintiff Edelstein from pursuing collection on a verdict and other legal matters.

105. Over the course of the divorce case, orders were issued that punished Plaintiff Edelstein for observing the Sabbath and relocating to a Jewish Community to observe her religion.

17

106.   When Plaintiff Edelstein informed Judge Flottman that Orders requiring her to drive on the Sabbath for visitation were in violation of her and Plaintiff S.E.'s First Amendment right to the Free Exercise of their religion, Judge Flottman issued an Order that would negatively impact her employment and was, therefore a continued violation of Plaintiff Edelstein's federal rights under the Fourteenth Amendment Substantive Due Process Clause.

107.   Upon information and belief, Plaintiff Edelstein attempted to have Judge Flottman disqualified from presiding over her divorce case, for her bias and prejudicial conduct, Judge Flottman proceeded to coordinate with other court officials to remove custody of Plaintiff S.E. from Plaintiff Edelstein.

108.   Upon information and belief, Judge Flottman acted punitively and in an anti-Semitic manner, violated her oath as a Judge to uphold the law, and used her power to violate Plaintiffs' rights under the Constitution.

109.   Upon information and belief, Judge Flottman acted punitively towards Plaintiff, abused her authority as a Judge to threatening Plaintiff's custody, and denied Plaintiff's constitutional  right under the 14th Amendment to the U.S. Constitution.

110.   As a direct and proximate cause of Judge Flottman's illegal acts, Plaintiff suffered damages including expenses in filing this Complaint, pain and suffering, mental and emotional distress, loss of health, and damage to her professional license.

111.   As a direct and proximate cause of the conduct of Defendant Flottman, Plaintiff Edelstein has been damaged and seeks compensatory, punitive, and liquidated damages in the amount of Two Million Dollars ($2,000,000.00).

**COUNT VI**
**VIOLATION OF 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - PROCEDURAL DUE PROCESS**
**(as to Plaintiff Edelstein by Defendant Webb)**

112.   Plaintiffs reallege the prior paragraphs, as if fully set forth below.

113.   Upon information and belief, in a spirit of revenge, Plaintiff Edelstein's husband filed for a Domestic Violence Protection Order ("DVCPO") after Plaintiff Edelstein had left Hamilton County and the State of Ohio.

114.   Magistrate Webb issued the ex parte order on perjured testimony and set the matter for a Final Hearing.  Plaintiff Edelstein filed a Motion to Dismiss with an affidavit addressing her husband's drug problem and the perjured testimony.

115.   Plaintiff Edelstein filed a Motion for an appearance by phone as she was on the east coast for job interviews and her elderly witness lived three hours from the DR Court.  When Plaintiff Edelstein followed up and asked why Magistrate Webb had not ruled on the Motion to Appear by Phone, Magistrate Webb's staff indicated that attorneys were allowed to appear by phone.

116.   On the morning of the Final Hearing, Plaintiff Edelstein and her witness appeared by phone.  Plaintiff Edelstein was told, for the first time, that her Motion to Appear by Phone was just denied.

117.   Magistrate Webb refused to allow Plaintiff Edelstein in the Hearing  to  explain  on  the record why she was appearing by phone, to object to the late decision denying her access to the Final Hearing, or to request a continuance.

118.   Defendant Webb's act of denying entry to the Final Hearing prevented Plaintiff Edelstein from creating a record of the refusal to allow entry into the Final Hearing.

119. Thereafter, Defendant Webb issued a Decision falsely stating that Plaintiff Edelstein had "failed to appear" at the Final Hearing.

120. Defendant Webb's act of denying entry to the Final Hearing and issuing an Order which contained a false representation were ministerial acts.

121. Plaintiff Edelstein has a Fourteenth Amendment right to procedural due process before her freedoms under the U.S. Constitution are taken from her by a DVCPO.

122. Defendant Webb violated Plaintiff Edelstein's Fourteenth Amendment procedural due process right by not ruling on the Motion to Appear by Phone in a timely manner and refusing to allow Plaintiff Edelstein access to the court to make factual statements on the record to support an Objection or Appeal.

123. Upon information and belief, Defendant Webb then covered up his violation of federal law by falsifying the record and claiming that Plaintiff Edelstein failed to appear for the Final Hearing.

124. Defendant Webb's acts were punitive, improper, and resulted in the issuance of a DVCPO against Plaintiff Edelstein, which removed freedoms guaranteed by the Constitution from her, including the right to own firearms and the right to freedom of movement.

125. Upon information and belief, Defendant Webb, as a sitting Magistrate, used the status of his position, and his official power to deny Plaintiff Edelstein her constitutional rights.

126. Upon information and belief, Defendant Webb's actions were done with malice, ill will, and/or a spirit of revenge.

127. Upon information and belief, Defendant Webb's actions have violated Plaintiff Edelstein's right to procedural due process as secured to her by the Fourteenth Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

128.   Plaintiff Edelstein suffered damages including loss of physical freedom, pain and suffering, mental and emotional distress, and loss of self-esteem.

129.   As a direct and proximate cause of the conduct of Defendant Webb, Plaintiff Edelstein has been damaged and seeks compensatory, punitive, and liquidated damages in the amount of One Million Dollars ($1,000,000.00).

**COUNT VII**
**VIOLATION OF 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - SUBSTANTIVE DUE PROCESS**
**(as to Plaintiff Edelstein by Defendant Webb)**

130.   Plaintiffs reallege the prior paragraphs, as if fully set forth below.

131.   Defendant Webb's visitation schedule required Plaintiff S.E. to be with his father, who was not Sabbath observant, every other weekend from Friday at 5:30 p.m. to Monday at 8:00 a.m. and every Tuesday from 7:00 p.m. to Thursday 7:00 a.m.

132.   As a result of this Order being issued, Plaintiff S.E. would not be able to observe the Sabbath twice per month, Plaintiff Edelstein would have to drive on Sabbath, and Plaintiff Edelstein's employment would be in jeopardy as it would force her to drive twice during the week from out of state, under penalty of contempt.

133.   Upon information and belief, Plaintiff Edelstein was forced to violate the visitation Order because of Plaintiffs' religious observances.   This damaged Plaintiff Edelstein's professional reputation and caused Plaintiff Edelstein to be treated in a negative and punitive manner by other Magistrates and Judges at the DR Court who worked in conjunction to remove Plaintiff S.E. from her custody despite the lack of interest in taking custody of Plaintiff S.E. by Plaintiff Edelstein's husband.

134. Upon information and belief, in issuing this Order, Defendant Webb's actions have violated Plaintiff Edelstein's right to substantive due process as secured to her by the Fourteenth Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

135. As a direct and proximate cause of the conduct of Defendant Webb, Plaintiff suffered damages including expenses related to this Complaint, mental and emotional distress, and loss of health.

136. As a direct and proximate cause of the conduct of Defendant Webb, Plaintiff Edelstein has been damaged and seeks compensatory, punitive, and liquidated damages in the amount of One Million Dollars ($1,000,000.00).

**COUNT IV**
**VIOLATION OF 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - PROCEDURAL DUE PROCESS**
**(as to Plaintiff Edelstein by Defendant Kent)**

137. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

138. After Plaintiff Edelstein's husband abandoned the family, Plaintiff Edelstein moved to a more religious community, enrolled Plaintiff S.E. into a religious school to give him a religious education and prepare him for his Bar Mitzvah, secured a large 3-bedroom home so Plaintiff S.E. could have his own bedroom and a large backyard to train his dog, and took other steps to ensure that Plaintiff S.E. had a stable and enriched existence where his father's abandonment of him was lessened by a full schedule of sports and activities.

139. Plaintiff Edelstein's husband lives in a one-bedroom apartment, works outside of the home all week, does not live within walking distance of a synagogue, does not keep kosher, and does not have a private religious school available for Plaintiff S.E. to attend.

22

140.  Defendant Kent was ordered to complete a full evaluation regarding custody of Plaintiff
      S.E.  A full custody evaluation would mean interviews of people on both parties' sides
      who knew of the marriage and the parenting styles of both parties.  This evaluation was
      to be a neutral evaluation.

141.  Upon information and belief, the officials at the Dispute Resolution Department were
      aware of the allegations of physical abuse and drug use by Plaintiff Edelstein's husband.
      The decision was made to scale back the evaluation, which would avoid inclusion of
      witness accounts of the bad conduct by Plaintiff Edelstein's husband being included in the
      evaluation.  In this manner, Plaintiff Edelstein's husband would artificially appear better
      than he was and more comparable as a parent to Plaintiff Edelstein.

142.  Judge Flottman then ordered the evaluation to be a partial evaluation instead of a full
      evaluation.  A partial evaluation would only include interviews of Plaintiff Edelstein,
      Plaintiff S.E., and Plaintiff Edelstein's husband.

143.  Upon information and belief, the partial evaluation was selected to reduce the negative
      information about Plaintiff Edelstein's husband being included in the Report and, with
      deliberate intent, skew the Report against Plaintiff Edelstein so custody could be taken
      away from her.

144.  Defendant Kent sent rules to Plaintiff Edelstein and her husband regarding the joint
      virtual interview of the parties.

145.  These rules included that (a) the parties had to be in a private location for the interview
      ("Privacy Policy") and (b) that one party's communications with Defendant Kent were not
      confidential and would be shared with the other party and court officials ("Confidentiality
      Policy").

23

146. Upon information and belief, Defendant Kent was ethically required under Ohio law and by her license to maintain, as a primary obligation, the privacy of parties she was ordered to evaluate.

147. Defendant Kent allowed Plaintiff Edelstein's husband to be in a public space for the interview where his alleged married, non-Jewish mistress ("mistress") was present and could eavesdrop on the interview.

148. Plaintiff Edelstein asked for the Privacy Policy to be enforced and the interview conducted in a private space and Defendant Kent falsely told Plaintiff Edelstein that she could not enforce the policy. Plaintiff Edelstein was forced to leave the interview to maintain her privacy and protect herself and her license to practice law from further harassment by her husband and his alleged mistress.

149. Defendant Kent would later insist on enforcing the Confidentiality Policy, to the detriment of Plaintiff Edelstein.

150. Upon information and belief, Defendant Kent's selective enforcement of policy was designed to humiliate Plaintiff Edelstein, place her at risk for harassment, exclude her from the interview, and prejudice the Report against Plaintiff Edelstein.

151. Upon information and belief, Defendant Kent also improperly included in the partial evaluation an interview of another family member in support of Plaintiff Edelstein's husband but did not provide Plaintiff Edelstein the same opportunity to present a witness on her behalf.

152. Defendant Kent's failed to protect Plaintiff Edelstein's procedural due process rights before issuing a report that would affect her constitutionally protected parenting rights.

153. Upon information and belief, Defendant Kent, as an official of the court and a court-appointed social worker, used the status of her position and her official power to deny Plaintiff Edelstein her constitutional rights and to produce a prejudiced evaluation.

154. Upon information and belief, Defendant Kent acted upon Defendant Flottman's directive and/or to assist Defendant Flottman in achieving her desired result of taking custody of Plaintiff S.E. from Plaintiff Edelstein.

155. Upon information and belief, the court appointed social workers' evaluation will be adopted and will be the basis for Defendant Flottman to improperly remove Plaintiff S.E. from the custody of Plaintiff Edelstein.

156. Upon information and belief, Defendant Kent's actions were done with malice, ill will, and/or a spirit of revenge.

157. Upon information and belief, Defendant Kent's actions in conducting a biased and unfair process violated Plaintiff Edelstein's right to procedural due process as secured to her by the Fourteenth Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

158. As a direct and proximate cause of the conduct of Defendant Kent, Plaintiff seeks damages in the amount of One Million Dollars ($1,000,000.00)

**COUNT IV**
**VIOLATION OF 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - PARENTAL RIGHTS**
**(as to Plaintiff Edelstein by Defendant Kent)**

159. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

160. Upon information and belief, Plaintiff has parental rights guaranteed to her the Fourteenth Amendment to the U.S. Constitution.

161.    Upon information and belief, Defendant Kent's actions in conducting a biased and unfair process affected the integrity of the Report and violated Plaintiff Edelstein's parental rights as secured to her by the Fourteenth Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

162.    As a direct and proximate cause of the conduct of Defendant Kent, Plaintiff seeks injunctive relief and damages in the amount of One Million Dollars ($1,000,000.00)

**COUNT IV**
**VIOLATION OF 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - SUBSTANTIVE DUE PROCESS**
**(as to Plaintiff Edelstein by Defendant Kent)**

163.    Plaintiffs reallege the prior paragraphs, as if fully set forth below.

164.    Defendant Kent also interviewed Plaintiff S.E., who is 11 years and 7 months old, but failed to ask him where he wanted to live.

165.    After the Interview, Plaintiff Edelstein filed two complaints against Defendant Kent with a state board that regulates social workers' licenses for her violation of the license's ethical standards.

166.    On October 26, 2023, Defendant Kent issued a "Partial Evaluation Report Regarding Parenting Time" ("Report") suggesting that Plaintiff Edelstein be only allowed to see Plaintiff S.E. on the weekends and that Plaintiff S.E. live with his father during the week.

167.    Upon information and belief, although the Report was deceptively entitled, it was effectively a custody recommendation as it removed Plaintiff S.E. from his mother's primary care.

168.    In the Report, Defendant Kent concluded that Plaintiff S.E. was "intelligent, articulate, and engaging," but he was "too young" to decide custody matters.

169.    Upon information and belief, the Report was written against Plaintiff Edelstein in retaliation for the state board complaints, to punish Plaintiff Edelstein for complaining about the court's lack of consideration for the Plaintiffs' Jewish observances, and in the spirit of anti-Semitism.

170.    Upon information and belief, Defendant Kent carefully crafted the Report to create the appearance that there were concerns with Plaintiff Edelstein despite no factual basis and in contradiction of the fact that both Plaintiff Edelstein's husband and oldest daughter recommended to Defendant Kent that Plaintiff S.E. remain with Plaintiff Edelstein.

171.    The Report was based on false statements by Plaintiff Edelstein's husband and Defendant Kent ignored the photographic evidence of physical abuse against Plaintiff Edelstein, ignored testimony by Plaintiff S.E. of physical abuse by his father, ignored evidence regarding the discreet buy at the Walmart parking lot, ignored testimony under oath by Plaintiff Edelstein of her husband's drug past and current drug use and made conclusion that are not in the best interest of the child, pursuant to Ohio law.

172.    Upon information and belief, because Plaintiff Edelstein indicated that she had to observe the Sabbath, Defendant Kent punitively recommended that Sabbath be the only time that Plaintiff Edelstein gets to spend with her son.  This removes Plaintiff S.E. from his religious school and community during the week.

173.    In issuing the Report and making the recommendations indicated therein, Defendant Kent acted in a gross, egregious, incompetent, and retaliatory manner to destroy Plaintiff Edelstein's parenting rights.

174. Defendant Kent abused her official position and acted to remove Plaintiff Edelstein of her parenting rights and substantive due process rights as secured to her by the Fourteenth Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

175. As a direct and proximate cause of the conduct of Defendant Kent, Plaintiff Edelstein seeks damages in the amount of One Million Dollars ($1,000,000.00)

**COUNT IV**
**DEFAMATION**
**(as to Plaintiff Edelstein by Defendant Kent)**

176. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

177. Upon information and belief, Defendant Kent placed false and defamatory information in the Report.

178. Upon information and belief, this information was not an opinion, but statements made as fact and were not verified for truthfulness prior to placing these statements in the Report.

179. Upon information and belief, Defendant Kent abused her authority under color of law when she presented false and defamatory information in the Report .

180. Upon information and belief, Defendant Kent published the Report to third parties at the DR Court with the intent to embarrass and humiliate Plaintiff Edelstein.

181. This defamatory publication was done with malice, hatred, a spirit of ill will, and/or with reckless or callous indifference to the federally protected right of Plaintiff Edelstein.

182. As a result of the defamation, Plaintiff Edelstein was harmed in an amount over $1,000,000.00.

**COUNT IV**
**VIOLATION OF 42 U.S.C. §1983**
**FIRST AMENDMENT - FREE EXERCISE CLAUSE**
**(as to Plaintiff S.E. by Defendant Kent)**

183. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

184. Defendant Kent's Report recommends taking Plaintiff S.E. from his religious school and from a religious community.  This would force Plaintiff S.E. to live in a community where he has no religious opportunities or education.

185. Defendant Kent's Report is what the Court will base its custody decision on and the recommendation has an anti-Semitic result and violates Plaintiff S.E.'s right to the free exercise of his religion as secured to him by the First Amendment to the U.S. Constitution and enforced through 42 U.S.C. §1983.

186. As a direct and proximate cause of the conduct of Defendant Kent, Plaintiff S.E. seeks damages in the amount of One Million Dollars ($1,000,000.00)

## COUNT XIII
## VICARIOUS LIABILITY BY HAMILTON COUNTY, OHIO

187. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

188. Upon information and belief, Defendants Flottman, Webb, and Kent serve the citizens of Hamilton County, receive a paycheck and benefits from Hamilton County, and derive all of their authority by statute and/or appointment as officials of Hamilton County.

189. Upon information and belief, Defendants Flottman, Webb, and Kent were acting in their official capacity as representatives of Defendant, Hamilton County when they used the authority under Hamilton County to abuse Plaintiffs and threaten the familial  bond between Plaintiffs.  This gave the appearance that Defendant, Hamilton County condoned the violations of the Plaintiffs' constitutional rights.

190. Upon information and belief, Defendant Hamilton County participates in a county cooperative insurance fund and Defendant Hamilton County is therefore a necessary party to this action by virtue of its coverage of the public officials it employs.

191. Upon information and belief, Defendant Hamilton County adopted policies and rules for its courts, such as the policy regarding "Custody Evaluator Responsibilities," which were disregarded by Defendants Flottman, Webb, and Kent.

192. Upon information and belief, Defendant Hamilton County is vicariously liable for the gross dereliction of duty and abuse of power committed by Defendant Kimberly Kent.

193. Upon information and belief, Defendant Hamilton County is vicariously liable for the improper and/or malicious actions taken by its employees acting in their official capacity.

194. Upon information and belief, Defendant Hamilton County is vicariously liable for the deprivation of constitutional rights of Plaintiff Edelstein and/or Plaintiff S.E. caused by officials and/or employees of Hamilton County, Ohio

195. As a result of these acts, Plaintiff Edelstein and/or Plaintiff S.E. suffered harm such as a loss of freedom, a loss of protection under the U.S. Constitution, the cost of this action, a loss of health, emotional distress, and mental suffering.

196. As a direct and proximate result of these official acts, Plaintiff Edelstein and/or Plaintiff S.E. has/have been damaged in the amount of One Million Dollars ($1,000,000.00).

## COUNT XIII
## LIABILITY OF CORSA

197. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

198. Upon information and belief, Defendant CORSA provides insurance coverage for liability for acts by public officials of Defendant Hamilton County, including Defendants Flottman, Webb, and Kent.

199. Upon information and belief, CORSA has a duty to defend the public officials of Defendant Hamilton County, Ohio, including Defendants Flottman, Webb, and Kent.

200. Upon information and belief, CORSA is vicariously liable for the actions of the public officials of Defendant Hamilton County, Ohio, including Defendants Flottman, Webb, and Kent.

201. Upon information and belief, CORSA will be responsible for paying any claims for which Plaintiffs are successful against the public officials of Hamilton County, Ohio, pursuant to the terms of their insurance policy.

202.  As a result of the coverage it provides, CORSA is a necessary party to this action and is liable for the damage caused by the covered parties under the applicable insurance policy.

## COUNT XIII
## LIABILITY OF DEFENDANT UIC #1

203. Plaintiffs reallege the prior paragraphs, as if fully set forth below.

204. Upon information and belief, Defendant UIC #1 provides insurance coverage for liability and/or malpractice by public officials of Defendant Hamilton County and/or the Magistrates and/or Judges at the Hamilton County Court of Common Pleas, Domestic Relations Division.

205. Upon information and belief, Defendant UIC #1 has a duty to defend the public officials of Defendant Hamilton County Defendant Hamilton County and/or the Magistrates

and/or Judges at the Hamilton County Court of Common Pleas, Domestic Relations Division, including Defendants Flottman, Webb, and Kent.

206. Upon information and belief, Defendant UIC #1 is vicariously liable for the actions of the public officials of Defendant Hamilton County, Ohio, including Defendants Flottman, Webb, and Kent.

207. Upon information and belief, Defendant UIC #1 will be responsible for paying any claims for which Plaintiffs are successful against the public officials of Hamilton County, Ohio, pursuant to the terms of their insurance policy.

208. As a result of the coverage it provides, Defendant UIC #1 is a necessary party to this action and is liable for the damage caused by the covered parties under the applicable insurance policy.

.

WHEREFORE, Plaintiffs pray as follows:

(a) Plaintiffs respectfully requests this Court enter a preliminary and permanent injunction enjoining Judge Flottman from further violations of the Plaintiff Edelstein's and/or Plaintiff S.E.'s Constitutional rights under the First Amendment, to wit: forcing Plaintiff Edelstein to violate the Sabbath by driving, forcing Plaintiff S.E. to move from his Jewish Community and Jewish education, forcing Plaintiff S.E. to spend Sabbath with his non-observant father, and removing Plaintiff S.E. from his religiously observant home with Plaintiff Edelstein.

(b) Plaintiffs respectfully requests this Court enter a preliminary and permanent injunction enjoining Judge Flottman from further violations of Plaintiff Edelstein's and/or Plaintiff S.E.'s Constitutional rights under the Fourteenth Amendment, to wit:

(c)     For a judgment finding that Defendant Flottman violated federal and Ohio law as set forth above;

(d)     For a judgment finding that Defendant Webb violated federal and Ohio law as set forth above;

(e)     For a judgment finding that Defendant Kent violated federal and Ohio law as set forth above;

(f)     For an Order that Defendant Hamilton County and/or CORSA and/or Defendant UIC #1 pay all damages Defendants Flottman, Webb, and/or Kent caused by their illegal conduct against Plaintiff Edelstein and/or Plaintiff S.E.;

(g)     For an award for compensatory, liquidated, and punitive damages against Defendant Flottman for pain, suffering, emotional distress, cost of this action, and loss of health in an amount greater than $1,000,000.00 to be determined by a jury in this case;

(h)     For an award for compensatory, liquidated, and punitive damages against Defendant Webb for pain, suffering, emotional distress, cost of this action, and loss of health in an amount greater than $1,000,000.00 to be determined by a jury in this case;

(i)     For an award for compensatory, liquidated, and punitive damages against Defendant Kent for pain, suffering, emotional distress, cost of this action, and loss of health in an amount greater than $1,000,000.00 to be determined by a jury in this case;

(j)     For an award of treble damages where malice is found to Plaintiff Edelstein and/or Plaintiff S.E. in an amount greater than $1,000,000.00 to be determined by a jury in this case;

(k)     For an award to Plaintiff Edelstein and/or Plaintiff S.E. for their costs in this action; and

(l)    That the Court grant Plaintiff Edelstein and/or Plaintiff S.E. such further relief as the court deems just and appropriate to remedy the acts of discrimination and/or retaliation by each of the named Defendants against Plaintiff Edelstein and/or Plaintiff S.E.

Respectfully submitted,

Kimberly Edelstein (0074922)
1751 W. 72nd Pl.
Indianapolis, IN 46260
Ph. (614) 975-2400
Email: kedelsteinesq@outlook.com

Plaintiffs demand trial by jury.

Kimberly Edelstein