IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| KIMBERLY EDELSTEIN, et al., | : | Case No. 1:23-cv-754 |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| v. | : | Magistrate Judge Stephanie K. Bowman |
| JUDGE ANN FLOTTMAN, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on the Report and Recommendation (Doc. 10) and Supplemental Report and Recommendation (Doc. 23) of United States Magistrate Judge Stephanie K. Bowman. Plaintiffs filed Objections to both Reports (Docs. 12, 25), and Defendants responded to those Objections (Docs. 17, 27.) Additionally, Plaintiffs' Motion for Leave to File a Reply to Defendants' Response (Doc. 20), Plaintiffs' Third Motion for Temporary Restraining Order (Doc. 26), and Second Motion for Leave to File Reply (Doc. 28) are before the Court. Finding these matters ripe for review, the Court will address each in turn.

### I.  Report and Recommendation

The Court first considers the Report and Recommendation ("Report") of Magistrate Judge Bowman (Doc. 10), to whom this case is referred pursuant to 28 U.S.C. § 636(b). In this initial Report, Magistrate Judge Bowman recommended that this Court dismiss this case without prejudice due to the lack of subject matter jurisdiction and deny

Plaintiffs' Motion for a Temporary Restraining Order ("TRO") (Doc. 6). (Report, Doc. 10, Pg. ID 98.)

### A. Plaintiffs' General Objections

Plaintiffs object to Magistrate Judge Bowman's findings, stating that they are "confused how a federal court could declare that a citizen's religious observances are frivolous and dismissal is warranted." (Objections, Doc. 12, Pg. ID 129.) But, the Report does not deem Plaintiffs' religious beliefs to be frivolous. Instead, Magistrate Judge Bowman found that the Court lacked subject matter jurisdiction over the underlying legal claims in the Complaint and that the well-established legal doctrines of abstention and judicial immunity bar Plaintiffs' requested relief. (*See* Report, Doc. 10, Pg. ID 94-98.) The Sixth Circuit has affirmed the practice of sua sponte dismissal in such circumstances. *See, e.g., Metzenbaum v. Nugent*, 55 F. App'x 729, 730 (6th Cir. 2003) (concluding that sua sponte dismissal was proper when defendant was entitled to absolute judicial immunity); *Danforth v. Celebrezze*, 76 F. App'x 615, 616-17 (6th Cir. 2003) (concluding that district court had properly dismissed, sua sponte, plaintiff's claims, which constituted an impermissible attack on state court domestic relations proceedings).

### B. Plaintiffs' Objections Related to *Burrus* Abstention

Next, throughout their Objections, Plaintiffs repeatedly emphasize that their suit involves constitutional claims. (*See, e.g.*, Objections, Doc. 12, Pg. ID 125, 132.) As the Sixth Circuit has instructed, however, "[i]t is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981). "When

analyzing the applicability of the domestic-relations exception, [courts] must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015). In performing this task, Magistrate Judge Bowman correctly concluded that "[a]ll of Plaintiffs' claims fall squarely within the domestic relations exception" to jurisdiction because "[a]ll of their requests seek to overturn prior state court domestic relations decisions, to dictate future custodial decisions, and to award monetary damages to both Plaintiffs based on past judicial decisions." (Report, Doc. 10, Pg. ID 95.)

The Court does not obtain jurisdiction over this domestic relations matter merely because Plaintiffs cloak their Complaint with constitutional language. *See, e.g., Greenberg v. Slatery*, No. 22-CV-5886, 2023 WL 2771640, at *2 (6th Cir. Mar. 28, 2023) (affirming abstention when "[t]he core of all six of [plaintiff's] claims, although cloaked in the language of constitutional torts, attacks the validity of the state court's judgment in the divorce and child-custody proceedings and seeks its nullification as the primary form of relief"); *Firestone v. Cleveland Tr. Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981) ("Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court."); *Abessolo v. Smith*, No. 1:11-CV-680, 2012 WL 668773, at *3 (S.D. Ohio Feb. 29, 2012), *report and recommendation adopted*, No. 1:11-CV-00680, 2012 WL 1564321 (S.D. Ohio May 2, 2012) (applying *Burrus* abstention to a matter involving constitutional claims "stem[ming] from an ongoing child custody and protection case in which Plaintiff, the biological father, is unhappy with both the

3

process and the result of past and current state judicial decisions").

### C. Plaintiffs' Objections Related to *Rooker-Feldman* Abstention

Next, Plaintiffs argue that Magistrate Judge Bowman incorrectly applied the *Rooker-Feldman* doctrine. (Objections, Doc. 12, Pg. ID 128.) The *Rooker-Feldman* doctrine of abstention "stands for the . . . proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Med. Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998). Plaintiffs argue that this doctrine is inapplicable because there has only been a temporary order regarding visitation issued by Judge Flottman—not a final decision. (Objections, Doc. 12, Pg. ID 128.) But, as the Sixth Circuit has held, the *Rooker-Feldman* doctrine applies to interlocutory orders too. *See Pieper v. Am. Arb. Ass'n.*, 336 F.3d 458, 462 (6th Cir. 2003); *Hancock v. Miller*, 852 F. App'x 914, 922 (6th Cir. 2021).

### D. Plaintiffs' Objections to *Younger* Abstention

Plaintiffs also object to Magistrate Judge Bowman's finding that the doctrine of *Younger* abstention applies to aspects of this matter. (Objections, Doc. 12, Pg. ID 128.) In order for *Younger* abstention to apply, three conditions must be met: (1) state proceedings are pending, (2) the state proceedings involve an important state interest, and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise the constitutional claims. *Parker v. Com. of Ky., Bd. of Dentistry*, 818 F.2d 504, 508 (6th Cir. 1987) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Plaintiffs object that the state proceedings have since concluded. (Objections, Doc.

4

12, Pg. ID 128.) Courts, however, "should look to whether a state proceeding was pending at the time the federal complaint was filed." *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) (citing *Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000)); *see also James v. Hampton*, 513 F. App'x 471, 474 (6th Cir. 2013). This condition is satisfied here because state proceedings were ongoing when Plaintiffs filed their Complaint. (*See* Compl., Doc. 2, ¶ 32; Motion for Injunctive Relief, Doc. 6.)

Furthermore, Plaintiffs object that "there is no opportunity to raise this federal question as Judge Flottman is unwilling to entertain such arguments and to adhere to her oath to uphold the Constitution. There is no other avenue for redress of grievances but the federal court." (Objections, Doc. 128, Pg. ID 128.) Under this requirement for *Younger*, Plaintiffs bear the burden of demonstrating that state law barred presentation of their constitutional claims. *See Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006). But, Plaintiffs state that they had previously brought their arguments within the state system and also appear to recognize their ability to appeal final decisions of the state court within the state system. (*See* Second Objections, Doc. 25, Pg. ID 233, 256.) Moreover, Plaintiffs have not met their burden in showing that "state law *clearly bars* the interposition of the constitutional claims." *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 334 (6th Cir. 2007) (cleaned up); *see also Shafizadeh v. Bowles*, 476 F. App'x 71, 73 (6th Cir. 2012) (concluding that the state appellate process gave plaintiff an adequate opportunity to raise his grievances concerning the presiding judge in a divorce case whom plaintiff alleged was biased against him).

### E. Plaintiffs' Objections Relating to Judge Flottman, Magistrate Webb, and Kimberly Kent's Entitlement to Judicial Immunity

Plaintiffs' Complaint also runs aground on judicial immunity. Judges retain absolute immunity when performing judicial acts—even erroneous or malicious ones—as long as they did not act in the clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Here, Plaintiffs object that Defendants acted in the complete absence of all jurisdiction and that their actions were not judicial in nature. (Objections, Doc. 12, Pg. ID 122-27.) The Court addresses each objection in turn.

#### 1. Judge Flottman Did Not Act in the Clear Absence of All Jurisdiction

Plaintiffs argue that Judge Flottman was "effectively acting outside her jurisdiction" because venue was improper. (Objections, Doc. 12, Pg. ID 123-24.) But this conclusion does not follow. In *Cunningham v. Department of Children's Services*, the Sixth Circuit explained that "to the extent that venue might have been improper in Rutherford County, there were no indications that [the judge] acted in the 'complete absence of all jurisdiction.'" 842 F. App'x 959, 964 (6th Cir. 2021). Rather, although the judge "may have committed error by finding venue to be proper, it was merely procedural error, which is protected by judicial immunity." *Id.* at 965 (citing *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001) ("Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity.")). So, even if the domestic relations matter took place in the improper venue, Judge Flottman would nevertheless be entitled to judicial immunity.

6

### 2. Judge Flottman and Magistrate Webb Performed Judicial Acts

Plaintiffs object that Magistrate Craig Webb performed non-judicial acts by (1) verbally refusing admittance into a final hearing, (2) refusing to allow a licensed attorney access to the record to make an objection, and (3) making a false statement in a written decision that was punitive in nature. (Objections, Doc. 12, Pg. ID 123.) Plaintiffs also contend that Judge Flottman made inflammatory personal comments that violated Plaintiffs' rights. (*Id.*) Although Plaintiffs state that these "acts [are] not typically judicial," they fail to provide legal support for this conclusion. (*Id.*) To be sure, these acts were all intertwined with Magistrate Webb's and Judge Flottman's judicial activities and are therefore covered by judicial immunity. Plaintiffs' contention that these actions were unethical or violated Plaintiffs' rights does not change this conclusion.

An act by a judge constitutes a judicial act when it is a "function normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). In fact, the actions of Judge Flottman and Magistrate Webb may be considered "paradigmatic judicial act[s]" since they involved "the resolution of a dispute between parties who have invoked the jurisdiction of the court." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989). Plaintiffs appear to implicitly recognize this conclusion: "If Judge Flottman held to her oath and acted to protect the civil rights of the Plaintiffs, then this action would not be necessary." (Objections, Doc. 12, Pg. ID 132.)

### 3. Kimberly Kent Performed Judicial Acts

Turning to Defendant Kimberly Kent, Plaintiffs argue that Kent—a social worker—is not entitled to immunity because she was not a "judicial officer" or acting within a "judicial capacity." (Objections, Doc. 12, Pg. ID 126.) Instead, Plaintiffs contend that Kent was "at best, support staff to the court performing an administrative function." (*Id.*) However, "[i]mmunity rests not on status or title but on the function performed." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). And, as Magistrate Judge Bowman correctly determined, Plaintiffs' claims against Kent all arise from her judicial functions. (Report, Doc. 10, Pg. ID 97.)

Plaintiffs allege that Kent issued a "Partial Evaluation Report Regarding Parenting Time" that suggested Plaintiff Edelstein only be allowed to see Plaintiff S.E. on the weekends. (Compl., Doc. 2, ¶ 166.) Tellingly, Plaintiffs further allege that this report was "effectively a custody recommendation as it removed Plaintiff S.E. from his mother's primary care." (*Id.* at ¶¶ 167, 185.) The Sixth Circuit has held that a social worker involved in an investigation and recommendation to a court about a child's situation is entitled to absolute immunity for this work since it is "intimately related to the judicial phase of the child custody proceedings." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 423 (6th Cir. 2001) ("The function of devising the plan for court-approval is intimately related to the judicial phase of the child custody proceedings."); *see also Pittman v. Cuyahoga Cnty. Dept. of Child. & Fam. Servs.* 640 F.3d 716, 725-26 (6th Cir. 2011).[1]

---

[1] The Court would also note that Kent's role was starkly different from that of the clerk in the out-of-circuit case cited by Plaintiffs. (*See* Objections, Doc. 12, Pg. ID 127.) In *Courthouse News Service*

8

Plaintiffs also object that Kent is not entitled to immunity because she (1) failed to maintain privacy during the interview, (2) failed to investigate the truthfulness of information received, (3) allowed a third party to give false information without providing Plaintiff Edelstein an opportunity to respond, and (4) issued her report based on animosity towards Plaintiff Edelstein. (Objections, Doc. 12, Pg. ID 127.) But, again, each of these contentions revolve around Kent's duties to the Court. *See, e.g., Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422-23 (6th Cir. 2001). For all these reasons, Plaintiffs' Objections to the Report are not well taken and are therefore overruled.

## II. Motions For Leave to File Reply or Motion to Strike

On December 19, 2023, Plaintiffs filed a motion for leave to file a reply to Defendants' Response to their Objections or, in the alternative, a motion to strike Defendants' Response. (Motion for Leave, Doc. 20.) Plaintiffs contend that they should be granted leave to file a Reply to brief the law presented in Defendants' Response or, in the alternative, that Defendants' Response should be stricken for being non-responsive to Plaintiffs' Objection. (*Id.* at Pg. ID 176.) After reviewing both Plaintiffs' Objections and Defendants' Response, the Court finds that Plaintiffs had an adequate opportunity to address Magistrate Judge Bowman's findings in the Report. Further briefing of the matter is unnecessary, and that Defendants' Response should not be stricken. Plaintiffs' motion (Doc. 20) is therefore denied.

---

*v. Forman*, a district court concluded that because a clerk's "nondiscretionary duty to docket complaints does not require the exercise of independent judicial judgment . . . [,] it is not an act taken in a 'judicial capacity.'" 601 F. Supp. 3d 1236, 1247 (N.D. Fla. 2022).

On January 31, 2024, Plaintiffs filed a Second Motion for Leave to File Reply (Doc. 28) and attached additional support for her Objections to Magistrate Judge Bowman's Supplemental Report and Recommendation. The Court is unpersuaded that Plaintiffs' new arguments would alter its analysis and denies Plaintiffs' motion (Doc. 28).

### III.    Supplemental Report and Recommendation

The Court now considers Magistrate Judge Bowman's Supplemental Report and Recommendation ("Supplemental Report") (Doc. 23). On December 22, 2023, Plaintiffs filed a Supplemental Memorandum Supporting Emergency Motion for Injunctive Relief (Doc. 21). Then, on December 26, 2023, Plaintiffs filed an Amended Complaint, adding an additional claim of Fourteenth Amendment Loss of Parental Rights (Kidnapping) (Doc. 22). Magistrate Judge Bowman filed a Supplemental Report in which she again recommended that this matter be dismissed for lack of subject matter jurisdiction and that the pending motion for a temporary restraining order be denied (Doc. 23). Specifically, Magistrate Judge Bowman noted that Plaintiffs' Amended Complaint suffers from the same deficiencies as the original Complaint because Plaintiffs' "newest claim amounts to nothing more than a new criticism of Judge Flottman's judicial actions and rulings in the underlying state court custody case." (Supplemental Report, Doc. 23, Pg. ID 222-25.)

Plaintiffs' Objections to the Supplemental Report focus upon the question of Judge Flottman's absolute immunity in this matter. (*See* Second Objections, Doc. 25, Pg. ID 232.) Plaintiffs argue that absolute immunity should not apply "(1) for acts outside a judge's jurisdiction; (2) for non-judicial acts; (3) where the official is incompetent; (4) where the

10

official knowingly violates the law; (5) where the official falsifies the record of evidence; and (6) where the official makes a false statement." (*Id.* at Pg. ID 255.) While Plaintiffs cite qualified immunity case law throughout their Objections, absolute judicial immunity and qualified immunity are distinct legal doctrines.[2] And, as for absolute judicial immunity, there are only two exceptions: non-judicial acts or acts taken in the complete absence of all jurisdiction. *See Bright v. Gallia County, Ohio*, 753 F.3d 639, 649 (6th Cir. 2014) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). Plaintiffs appear to recognize this well-established jurisprudence elsewhere in their Objections. (*See, e.g.*, Second Objections, Doc. 25, Pg. ID 240, 244-45.)

The Court therefore views Plaintiffs' Objections through the framework of these two exceptions. Turning to jurisdiction, Plaintiffs object, again, that Judge Flottman was presiding over the case without proper venue. (Second Objections, Doc. 25, Pg. ID 245.) But, as explained above, improper venue does not rise to the level of a judge acting in the complete absence of all jurisdiction. *See Cunningham v. Dept. of Children's Servs.*, 842 F. App'x 959, 964 (6th Cir. 2021); *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001).

Next, Plaintiffs argue that Judge Flottman's acts of "failing to follow the procedural safeguards to protect a child, and especially maneuvering certain procedures to disadvantage one parent, go beyond the scope of protection provided under this 'grave procedural errors' umbrella." (Second Objections, Doc. 25, Pg. ID 246.) But, Plaintiffs do

---

[2] Plaintiffs also cite to the Supremacy Clause. (*See* Second Objections, Doc. 25, Pg. ID 253.) While the Supremacy Clause "instructs courts what to do when state and federal law clash, [it] is silent regarding who may enforce federal law in court, and in what circumstances they may do so." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015).

11

not support this conclusion with case law. The Court finds that Judge Flottman's actions—even if they were to be considered "grave" procedural errors—"are not rendered any less judicial for absolute judicial immunity purposes." *Barnes v. Winchell*, 105 F.3d 1111, 1121 (6th Cir. 1997); *see also Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994).

Plaintiffs further argue that immunity should not apply because Judge Flottman's acts arose from her "personal vendetta, personal agenda, or political agenda." (Second Objections, Doc. 25, Pg. ID 252.) Supreme Court precedent says otherwise. A judge's judicial acts "alleged to have been done maliciously or corruptly" are still subject to absolute judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quotation omitted); *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (explaining that "judicial immunity is not overcome by allegations of bad faith or malice").

Plaintiffs' next argument that Judge Flottman committed non-judicial acts by "act[ing] as an opponent in [the] case or, at times, as an advocate for a party" is similarly unpersuasive. (Second Objections, Doc. 25, Pg. ID 249.) As the Sixth Circuit has explained, "even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Here, Judge Flottman's acts pertained to the paradigmatic judicial function of resolving the dispute before her, and the parties dealt with her in her judicial capacity. For all these reasons, Plaintiffs' Objections to the Supplemental Report are not well taken.

IV. **Plaintiffs' Third Emergency Motion for Ex-Parte Injunctive Relief**

On January 16, 2024, Plaintiffs filed a Third Emergency Motion for Ex-Parte Injunctive Relief and Hearing ("Third Motion for TRO," Doc. 26), which largely tracks the Supplemental TRO that Magistrate Judge Bowman recommended denying in the Supplemental Report. (Supplemental Report, Doc. 23, Pg. ID 226.) Plaintiffs' Third Motion for TRO seeks two forms of relief: (1) an ex parte temporary restraining order to correct Judge Flottman's action of removing Plaintiff S.E. from his mother and (2) injunctive relief regarding the final decree of divorce by the court. (Third Motion for TRO, Doc. 26, Pg. ID 258.) The Court denies Plaintiffs' request for a temporary restraining order to correct Judge Flottman's child custody decisions because it agrees with Magistrate Judge Bowman's finding that it "does not change the prior analysis." (Supplemental Report, Doc. 23, Pg. ID 226.)

Plaintiffs added the requested relief concerning the final divorce decree after Magistrate Judge Bowman's consideration of the matter. Nevertheless, this relief is similar to the relief Plaintiffs have sought throughout this litigation. (*See* Motion for TRO, Doc. 6, Pg. ID 74 (seeking stay of divorce proceedings)). Therefore, for the reasons previously explained, it is similarly barred by *Burrus* abstention, *see Ex parte Burrus*, 136 U.S. 586 (1890) and the *Rooker-Feldman* doctrine. The Court denies Plaintiff's Third Motion for TRO.

**CONCLUSION**

As required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has made a de novo review of the record in this case. Plaintiffs' Objections (Docs.

12, 25) are not well taken and, therefore, **OVERRULED**. Accordingly, the Court **ORDERS** the following:

(1) The Report and Recommendation (Doc. 10) is **ADOPTED** in its entirety;

(2) The Supplemental Report and Recommendation (Doc. 23) is **ADOPTED** in its entirety;

(3) Plaintiffs' Motion for Leave to File Reply or, in the alternative, Motion to Strike Defendants' Response to Objections as Non-Responsive (Doc. 20), is **DENIED**;

(4) Plaintiffs' Motion for Temporary Restraining Order (Doc. 6) is **DENIED**;

(5) Plaintiffs' Third Motion for Temporary Restraining Order (Doc. 26) is **DENIED**;

(6) Plaintiffs' Second Motion for Leave to File Reply (Doc. 28) is **DENIED**; and

(7) This case is **DISMISSED WITHOUT PREJUDICE** and **TERMINATED** from the docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND